IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA      )
                              )
        v.                    )          1:24CR352-12
                              )
CARMEN VALENZUELA             )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

On November 25, 2024, a federal grand jury for this district indicted Defendant Carmen Valenzuela ("Defendant") on two counts. The first count was for knowingly, intentionally, and unlawfully conspiring with others to distribute fentanyl, methamphetamine, and cocaine, with the amount attributable to her alleged to be 400 grams or more of a mixture and substance containing a detectable amount of fentanyl and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and 18 U.S.C. § 2.

The second count was for knowingly, intentionally, and unlawfully conspiring with others to knowingly conduct and cause to be conducted financial transactions affecting interstate and foreign commerce, which involved the proceeds of conspiring to distribute fentanyl, methamphetamine, and cocaine hydrochloride, with the intent to promote the carrying on of such specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and causing to be conducted such financial transactions, Defendant knew that the property

involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i).

Defendant was initially arrested in Arizona, and after a detention hearing was held, she was ordered released pending trial on her own recognizance with conditions. However, the Government appealed that determination under 18 U.S.C. § 3145(a), and the District Judge in this district stayed the release decision and ordered that Defendant remain in custody pending further proceedings in this district related to the Government's appeal, specifically a *de novo* detention hearing. (Docket Entry 208.) The District Judge also ordered that this district's Probation Office prepare a pretrial service report. (*Id.*)

On January 27, 2025, the case came before the undersigned for a *de novo* detention hearing. At the end of the hearing, the undersigned found that clear and convincing evidence established that no combination of available release conditions would reasonably assure the safety of the community, and a preponderance of evidence established that no conditions would ensure Defendant's presence in court. Defendant has not overcome the presumption that she presents a danger to the community and a flight risk.[1] The undersigned now enters this recommendation for detention.

---

[1] Under 18 U.S.C. § 3142, if there is probable cause to believe that a defendant committed an offense subject to a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, a rebuttable presumption arises, such that "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," 18 U.S.C. § 3142(e)(3). Defendant has been indicted for offenses under 21 U.S.C. §§ 841 and 846, triggering the rebuttable presumption of detention.

Case 1:24-cr-00352-UA     Document 312     Filed 01/28/25     Page 2 of 8

# I. BACKGROUND

Before the hearing and as ordered, a United States Probation Officer in this district prepared an updated Pretrial Services Report regarding Defendant's history, residence, family ties, employment history, financial resources, health (including as it relates to mental health and substance abuse issues), and prior record. Both parties had an opportunity to review that report before the hearing and there were no objections to its contents.

At the hearing, Defendant was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f). The United States called (and, through her counsel, Defendant cross-examined) DEA Task Force Officer and employee with the Randolph County Sheriff's Office Glen Sakamura who investigated this matter, and reviewed reports related to the case. Defendant did not proffer any witnesses or potential third-party custodians.

# II. DISCUSSION

In considering the question of release or detention pending trial, the Court considers the following statutorily-prescribed factors:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the [defendant] . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent

determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

Based on the record before it, the Court makes the following findings of fact and/or conclusions of law. First, with respect to the nature of the offense charged against Defendant, the Court notes that the charge is serious, involving alleged participation in a large-scale drug-trafficking distribution across multiple states and with ties to Mexico. Second, the weight of the evidence against Defendant is strong as to the charged offense in that the Government presented the testimony of Officer Sakamura who testified about the events leading up to the indictment.

Specifically, Officer Sakamura described a "package case" involving shipping packages containing drugs and cash across the United States via the United States Postal Service ("USPS"). The DEA, FBI, HSI, and IRS investigated these packages and determined that a drug trafficking organization ("DTO") utilized these packages and was responsible for trafficking more than 80 kilograms of methamphetamine and 30 kilograms of fentanyl via USPS.

According to Officer Sakamura, Defendant worked under the direction of her boyfriend at the time, codefendant Emmanuel Martimiano Leon-Soto ("Leon-Soto"). The estimated amount of money that Defendant is accused of laundering is $250,000. Defendant's primary role was to receive and transport money; she received several packages containing cash. Law enforcement intercepted some of those packages, obtained search warrants for the packages, counted the money inside the packages, returned the money to the packages, resealed the packages, and had the packages entered back into the mail stream. Those packages consistently contained tens of thousands of dollars. This

4

investigative technique allowed law enforcement to understand others who may have been involved in the alleged trafficking and conspiracy scheme.

Defendant was not only involved in the money-related aspect of the conspiracy but was also found to be in possession of several kilograms of fentanyl and several kilograms of methamphetamine. In October of 2023, law enforcement executed a search warrant of Defendant's home, during which they located a firearm, 9.8 kilograms of fentanyl and 3.4 kilograms of methamphetamine. While investigators were executing the warrant, USPS delivered a package to the home, which Defendant advised the investigators contained more than $100,000 in cash, and which did in fact contain more than $100,000 in cash. Defendant also told investigators that other packages that law enforcement had seized contained tens of thousands of dollars, which were payments made in exchange for drugs. Defendant also mentioned that she knew a "trick" to transport money from the United States to Mexico.

Officer Sakamura stated that Defendant would receive money from codefendant Nicholas Curry ("Curry"), who is the "lead defendant" in this case, and would then call Curry to confirm receipt of the money. Defendant also advised that her son, Ivangianni Valenzuela Gonzalez ("Ivangianni"), a codefendant in this case, would receive and distribute narcotics for Leon-Soto. Law enforcement seized Defendant's phone during the execution of the search warrant, and on her phone, law enforcement found that she would use the password "Sinaloa" and "one hundred percent." Law enforcement found USPS package tracking activity for several packages, Cash App activity, and "messages involving Sinaloa, money, packages, and package tracking." Law enforcement also found a video from September 2022 of a money package that was sent via FedEx.

5

One of the messages between Defendant and Ivangianni consisted of Ivangianni asking for money because he wanted to "go in half" with Curry. There were also several text messages that Defendant was organizing and arranging for Ivangianni to pick up large amounts of drugs. The messages also contained references to making fictitious shipping addresses, fictitious names, and using USPS to send some of these packages.

Defendant and Ivangianni also talked about receiving money from Curry and sending each other screenshots of money transfers involving Curry. Defendant and Ivangianni also discussed using an alias commonly used by the DTO to ship a package. According to Customs and Border Patrol records, Defendant has traveled to Mexico 22 times during 2024; the most recent trip there was in December 2024. On cross-examination, Officer Sakamura testified that everyone that Defendant had drug contacts with has been arrested in this case.

Having considered the information presented, and based upon the nature of the pending charge, the Court has serious concerns about Defendant's potential danger to the community and flight risk. The alleged serious offense involves in a large-scale drug trafficking conspiracy across multiple states with connections to Mexico. The testimony of Officer Sakamura during the hearing suggests Defendant's significant involvement in the drug operation. Considering the seriousness of the offense charged and Defendant's ties to a foreign country, there are significant flight risk concerns. Ultimately, the undersigned concludes that the record establishes by clear and convincing evidence that no combination of available release conditions would reasonably assure the safety of the community, and a preponderance of evidence establishes that no conditions would ensure Defendant's presence in court. Defendant has not rebutted the presumption of detention in this matter.

Defendant's medical condition was raised during the hearing. Specifically, Defendant is pregnant, with a due date toward the end of May 2025. Since early December 2024, Defendant has been held at Piedmont Regional Jail in Virginia. Defense counsel stated that while Defendant has been incarcerated, she has received no prenatal care other than having her blood pressure checked. He also stated that Defendant was previously prescribed medication for preeclampsia but has been unable to access that medication since being incarcerated. The undersigned acknowledged concerns given the serious nature of the medical condition. The undersigned instructed that a joint report be prepared and filed by the prosecution, the defense, and the United States Marshals Service as to whether Defendant is receiving adequate medical care by 12:00 p.m. on Friday, January 31, 2025. The undersigned noted that if the medical care Defendant is receiving is inadequate, the undersigned would consider modifying or reversing its recommendation of detention.

**IT IS THEREFORE RECOMMENDED** that the motion for detention by the United States be **GRANTED** and that Defendant be detained pending disposition of the instant charges under 18 U.S.C. § 3142(e)(1). Defendant should be committed to the custody of the Attorney General of the United States or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant should be afforded a reasonable opportunity for private consultation with defense counsel. On order of a United States court or on request of an attorney for the Government, the person in charge of the corrections facility should deliver Defendant to the United States Marshals Service for the purpose of an appearance in connection with a court proceeding.

Case 1:24-cr-00352-UA    Document 312    Filed 01/28/25    Page 7 of 8

**IT IS THEREFORE ORDERED** that a joint report be prepared and filed by the prosecution, the defense, and the United States Marshals Service as to whether Defendant is receiving adequate medical care by 12:00 p.m. on Friday, January 31, 2025. If the medical care Defendant is receiving is inadequate, the undersigned will consider modifying or reversing its recommendation of detention. **FURTHER**, to the extent practicable, the custodians of Defendant shall provide appropriate prenatal care and appropriate medical care to Defendant for her pregnancy while in the custody of the United States Marshals Service.

/s/ Joe L. Webster
United States Magistrate Judge

January 28, 2025
Durham, North Carolina

8